**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**WALTER DUANE WHITE,**

        **Petitioner,**

**v.**                                               **Civil Action No. 3:07cv8
(Judge Bailey)**

**JOYCE FRANCIS, Warden,**

        **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

The above styled case is before the undersigned for consideration of the *pro se* petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, including several supplements and memorandums in support, the government's response, and the petitioner's reply. In the petition, the petitioner challenges a disciplinary proceeding that resulted in the loss of good conduct credit and alleges several violations of his constitutional rights.

### I. Factual and Procedural History

**A.**   **Petitioners' Disciplinary Proceedings**

On September 13, 2006, the petitioner received an incident report in which he was charged with a violation of prohibited act code 328, Giving/receiving money or anything of value to/from another inmate or any other person without staff authorization.[1] The report stemmed from several incidents that took place between September 8, 2006 and September 12, 2006. More specifically, the report alleged that on September 8, 2006, at 3:07 p.m., the petitioner placed a telephone call to

---

[1] For a copy of the incident report see Resp't Response (dckt. 16), Ex. 1 at Att. 1.

telephone number (304)319-1947. During that call, the petitioner stated that he could not shop, but that he could get around it. Subsequently, petitioner placed a call to (304) 599-5191 on September 11, 2006, at 7:29 p.m. During that call, the female on the other side of the line stated that she "need[ed] Terry's number again." The petitioner then tells her "05084-087," and asked if she had Terry's last name. The female stated, "Everett, E-v-e-r-e-t-t." The petitioner then asked the female if she knew how much to "put in there." The female replied, "Yes. Seventy-five." On September 12, 2006, inmate Terry Everett, register number 05084-087, received a $75.00 money order in his inmate account. The incident report was prepared on September 13, 2006, and given to petitioner's at 6:42 p.m. that same day. Resp't Ex. 1 at Att. 1.

On September 17, 2006, a hearing was held before a Unit Disciplinary Committee ("UDC").[2] Id. At that hearing, the petitioner stated that he believed the incident report was in retaliation for his filing grievances, and that he has control of what he does, but not over others. Id. The UDC referred the charges to a Disciplinary Hearing Officer ("DHO") for further proceedings.[3] Id. Additionally, the UDC recommended sanctions of 14 days loss of good conduct time, three months loss of telephone privileges and disciplinary segregation. Id. Petitioner received a Notice of Discipline Hearing on September 17, 2006. Id. at Att. 2. At that time, the petitioner stated that he did not wish to call witnesses, but he did request a staff representative. Id. The petitioner was also advised on

---

[2] Pursuant to 28 C.F.R. §§ 541.2 and 541.15, a Unit Disciplinary Committee consists of one or more staff members who hold an initial hearing within 3 working days from the date staff became aware of an incident to determine whether the prohibited act, or a similar one, was committed, not committed, or whether further proceedings are needed.

[3] Pursuant to 28 C.F.R. §§ 541.2, a disciplinary Hearing Officer is an independent hearing officer who conducts disciplinary hearings referred for further action by the UDC and who imposes sanctions if a violation is found.

his rights at the disciplinary hearing. Id. at Att. 3.

The petitioner received a DHO hearing on September 27, 2006. Id. at Att. 4. The requested staff representative was present and the petitioner was again advised on his rights. Id. The petitioner stated that he understood. Id. When asked if he would like to make a statement, the petitioner again stated that he could only control what he did, and not others. Id. The DHO determined that the petitioner committed the prohibited act as charged. Id. The DHO considered the incident report itself, the petitioner's statements and denial of the charges, and determined that the petitioner had orchestrated the delivery of $75 until the account of another inmate to circumvent his commissary restrictions. Id. As a result, the petitioner was sanctioned 14 days loss of good time, six months loss of telephone privileges and 15 days of disciplinary segregation. Id.

The petitioner was advised of these findings, the specific evidence relied on, the action taken, the reasons for that action, and his right to appeal the decision within 20 calendar days. Id. The petitioner received a copy of the report on October 12, 2006. Id.

## II. The Pleadings

### A. The Petition

In the petition,[4] the petitioner asserts that he is entitled to relief for the following reasons:

1) the incident report was false and retaliatory;

2) the Bureau of Prisons ("BOP") failed to properly follow its regulations because he did not receive a copy of the incident report within 24 hours of when staff became aware of the incident;

---

[4] The petitioner's supplements and other "memoranda" in support of his petition have been considered by Court, and the arguments contained therein, have been incorporated into the claims of the petition.

3

3) he did not commit the charge to which he was found guilty;

4) the DHO lied and was disrespectful;

5) the imposed sanctions were extreme;

6) the BOP hampered his access to the Courts when it denied him access to his legal work/research materials; and

7) the decision of the DHO was wrong and unsupported by the evidence.

**B.  The Government's Response**

In its response, the government asserts that relief should be denied because:

1) the petitioner received all the process he was due;

2) the incident report was received in a timely manner;

3) the imposed sanctions were appropriate; and

4) the remaining claims should be dismissed as improperly raised under § 2241.

**C.  The Petitioner's Reply**

As to the merit of his claims, in reply to the government's response,[5] the petitioner asserts that he has raised valid constitutional issues as authorized by § 2241.  The plaintiff contends that his civil rights issues, namely the denial of access to the courts and retaliation claims, are being pursued in case number 1:07cv32 and are not the focus of this habeas corpus litigation.  Thereafter, the plaintiff cites numerous caselaw which purportedly support the claims he raises in the petition.  Thus, the petitioner asserts that his claims are non-frivolous and that he is entitled to relief.

---

[5] Although the petitioner also filed several "memorandums" in support of claims after the filing of the government's response, those memorandums mainly contain copies of administrative remedies and potential witness names.  The petitioner's actual reply to the government's response appears to be the declaration (dckt. 24) filed on May 14, 2007.

### III. Analysis

#### A. Petitioner's Constitutional Claims

To the extent the petitioner seeks relief under § 2241 for alleged violations of his constitutional rights, *i.e.*, retaliation and denial of access to the courts, as noted by the government in its response, and conceded by the petitioner in his reply, those claims are not properly raised under § 2241 and should be dismissed. See 28 U.S.C. § 2241 (a § 2241 petition is used to attack the manner in which a sentence is executed); Preiser v. Rodriguez, 411 U.S. 475, 499-500 (1973) (a § 2241 petition is appropriate where a prisoner challenges the fact or length of his confinement, but generally not the conditions of that confinement).

#### B. Merits of Petitioner's Claims

The Federal Bureau of Prisons ("BOP") is charged with the responsibility of administering the federal prison system. See 18 U.S.C. § 4042. Included in this duty is the obligation to provide for the protection, instruction and *discipline* of all persons charged with or convicted of offenses against the United States. § 4042(a)(3) (emphasis added). Therefore, the BOP has promulgated rules for inmate discipline. See 28 C.F.R. § 541.10, et seq.

Moreover, prison disciplinary proceedings are not part of a criminal prosecution, therefore, the full panoply of rights that are due a defendant in a criminal proceeding do not apply in prison disciplinary proceedings. Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975 (1974) ("there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution"). However, inmates are entitled to some due process protections. Id. Those protections include: written notice of the charges at least 24 hours before a hearing to enable the inmate to prepare a defense; to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety, and a written explanation of the evidence relied on and

reasons for disciplinary action. Id. On the other hand, an inmate does not have a right to confrontation and cross-examination, or a right to counsel. Id at 567, 570. Disciplinary decisions comport with the requirements of procedural due process when there is "some evidence" to support the disciplinary decision by the fact finder. Superintendent, Mass. Corr. Institution v. Hill, 472 U.S. 445, 117 S.Ct. 1584 (1985).

In this case, it is clear that the petitioner received all the due process to which he was entitled. It is undisputed that petitioner received all of the due process safeguards delineated in Wolff.[6] The crux of the petitioner's claim is that he did not commit the charged violation and the evidence was insufficient to uphold the DHO's findings. Those claims, however, are without merit.

The evidence presented to the DHO consisted of an incident report based on telephone conversations the petitioner had with a family member, in which he indicated that although he "couldn't shop," he had ways of getting around that restrictions. Just days thereafter, the petitioner was heard giving a family member information on inmate Terry Everett, register number 05084-087. Moreover, the family member asked "how much" to "put into it," to which the petitioner replied $75. The very next day, inmate Everett received a money order in his inmate account for $75. Although the petitioner denied the charges, and these incidents could merely be coincidental, there was clearly some evidence to support the finding of the DHO.

---

[6] To the extent that the petitioner argues he did not receive a copy of the incident report within 24 hours of the incident, the petitioner has misconstrued the meaning of 28 C.F.R. § 541.15(a). Section 541.15(a) states that the BOP must give an inmate a copy of an incident report "ordinarily within twenty four hours of the time staff became aware of the inmate's involvement in the incident." Although the initial telephone took place on September 8, 2006, the alleged violation did not take place until the $75 was actually deposited into inmate Everett's account. The deposit was made on September 12, 2006, and the petitioner received a copy of the incident report on September 13, 2006. Thus, there is no violation of § 541.15(a).

As to the petitioner's claim that the DHO was rude and disrespectful, and falsely accused the petitioner of swearing during the disciplinary proceedings, none of those claims, even if true, rise to the level of a constitutional violation, or support a finding that the petitioner's disciplinary report should be expunged. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) ("even the most abusive verbal attacks do not violate the constitution"); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (same).

As to the petitioner's claims that his sanctions were extreme, as previously noted, the authority to administer prison discipline is within the discretion of the BOP. Moreover, even if this Court could review the sanctions imposed in a prison disciplinary proceeding, the undersigned does not believe that the sanctions imposed in this case were extreme. Attempting to circumvent restrictions placed on an inmate is a severe violation of prison rules and regulations. Generally, those rules and regulations are created for safety and security reasons, as well as for disciplinary and incentive based reasons. Therefore, allowing an inmate to circumvent those restrictions without severe recourse would jeopardize the orderly running of the institution.

### IV. Recommendation

For the foregoing reasons, the undersigned recommends that the petitioner's § 2241 petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to the Recommendation set forth above will

result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt, to his last known address on the docket, and to counsel of record via electronic means.

DATED: August 19, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE